IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2006

**BOBBY BLACKMON v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Sumner County**
**No. 911-2002     Jane Wheatcraft, Judge**

---

**No. M2004-03070-CCA-R3-PC - Filed January 11, 2007**

---

The petitioner, Bobby Blackmon, appeals the denial of his post-conviction petition and asserts that: (1) he was denied a full and fair post-conviction hearing; and (2) he received ineffective assistance of appellate counsel. Upon review, we conclude that the petitioner received a full and fair hearing and effective assistance of appellate counsel. The judgment denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID H. WELLES, JJ., joined.

Jodie A. Bell, Nashville, Tennessee, for the appellant, Bobby Blackmon.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee David Gay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The petitioner was convicted by a Sumner County jury of the offense of possession with intent to sell more than three hundred grams of cocaine and was sentenced to thirty-eight years in prison. The conviction was affirmed by a panel of this court on direct appeal. See State v. Blackmon, 78 S.W.3d 322, 332 (Tenn. Crim. App. 2001). Thereafter, the petitioner filed a pro se petition for post-conviction relief and refused appointed counsel. The petitioner began his proof by testifying on his own behalf. He testified that this court said in his direct appeal that the chain of custody issue was not properly briefed and, therefore, was not considered. The petitioner said he wanted a jury instruction on solicitation at trial. He also said that, in a reverse sting operation, he

would never have controlled the distribution of the drugs. He claimed that, had this issue been properly briefed and pursued on appeal, it would have changed the outcome. He further claimed that he did not receive a copy of the briefs submitted in his direct appeal from his attorney or from the State. He testified that not receiving the brief fell within the parameter of deficient performance under Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). Finally, he testified that his appellate counsel failed to notify him of the right to file a Rule 11 application for permission to appeal to the supreme court.

During cross-examination, the petitioner testified that he obtained a GED while in Brushy Mountain Prison, and an Associate degree from Tennessee State University and a paralegal certificate while in jail. He testified that he was convicted of first degree murder in 1970, for which he received a life sentence. He was also convicted of robbery in 1970. In 1984, he was convicted for his escape from the penitentiary in 1972. While he was on escape status, he was convicted of attempted robbery in Los Angeles in 1980. Additionally, he was convicted in 1968 for third degree burglary and larceny from a person. He acknowledged that he had been convicted of seven felonies. He also acknowledged that he had previously been denied post-conviction relief based on a claim of ineffective assistance of trial counsel. He said that after his first conviction on this charge, he appealed and was awarded a new trial where he was convicted a second time. He testified that he had standby counsel for his motion for a new trial but claimed he did not receive any advice from counsel. He claimed that he gave his standby counsel forty-two issues he wanted raised in his motion for new trial. He testified that after his sentencing hearing, his standby counsel was appointed as counsel of record and argued the motion for new trial and his appeal, in which the conviction was affirmed. He acknowledged that the issues of ineffective assistance of counsel, a defective indictment, and an excessive sentence were raised and that this court held there was no reversible error. He said he had no contact with counsel after the appellate court's decision and never received a copy of the opinion. He filed for post-conviction relief and requested leave to finish his direct appeal. His request was granted, and he pursued his appeal to the supreme court but certiorari was denied. He claimed that his issues are not barred by res judicata. He further said that his complaint with appellate counsel was that counsel did not brief or argue what he wanted. He claimed that his counsel "didn't call no shots" and implied that he was responsible for directing counsel in his defense. He said that once he, as the defendant, made a "knowing and intelligent defense," counsel was ethically bound to follow his instructions.

Next, the petitioner called his former counsel on his direct appeal. Appellate counsel testified that when he made an appeal, he selected issues that he felt were most likely to result in an overturning of the original court's order. He said that he did not feel the chain of custody issue was a winning issue because his argument was that the cocaine originally came from Panama and General Noriega and he felt that there was not a sufficient foundation for the record to support any such claim. He believed that he briefed it as well as he could, based on the record and circumstances. He did not recall whether the lesser included offense of attempt had any merit and, further, he could not recall discussing that issue with the petitioner. He did recall discussing outrageous government conduct with the petitioner because it was the issue the petitioner found the most important to pursue. He said that he attempted to secure the prior trial transcript and filed a motion asking the

court to order the State to pay for it but was denied. Because the petitioner could not pay the cost of the transcript, counsel felt no need to pursue it. The petitioner wanted a transcript of a prior trial that he felt may have been helpful in preparing an attack based on what the petitioner indicated were lies told by law enforcement in the second trial. Counsel did not feel the issue of outrageous government conduct was decided in the light most favorable to the petitioner.

On cross-examination, appellate counsel testified that he had practiced law for twenty-one years and that he was licensed in Tennessee and Indiana. He said that he had practiced in Tennessee since 1999, and that 40% of his practice was criminal work. He said that he had argued and filed briefs before both the Tennessee Supreme Court and Court of Criminal Appeals. He said that he became involved in this case after the petitioner's second trial and conviction. He testified that the State had video and audio tapes of the petitioner setting up the drug transaction and bringing money for the transaction. He believed that the State's evidence was fairly strong. He said that he was appointed standby counsel and sat in through the sentencing hearing before he was later appointed as appellate counsel. He filed and argued the motion for new trial based on errors that he discussed with the petitioner. At the time, he tried to pursue all of the errors that the petitioner felt had been committed and tried to argue those as best he could. He said that the motion was denied, and he filed a notice of appeal to this court. He briefed the case based on what he felt were his strongest arguments and were most likely to overturn the conviction. Based on the record, he did not believe there was anything that would have supported the claim of a deficient chain of custody. He said that he got along well with the petitioner and that he believed the petitioner was quite knowledgeable in the law. He said that they had significant discussions on issues that the petitioner felt were important but that he felt lacked merit. He omitted those he felt he could not argue "with a straight face." He said that he consulted the petitioner on all avenues of the appeal. He also said that he could not remember the oral argument but said that he did not think he had appealed a criminal case without oral argument. He also did not remember any further contact with the petitioner but believed that he sent him a copy of the opinion. He testified that it was his policy to send a letter with the opinion saying, "Here's the opinion." He probably did not advise him of his Rule 11 rights "because quite frankly I hadn't even thought about it." He said that he believed it was his obligation to provide the first appeal and not to file an appeal with the supreme court. He also said that he drafted an order and sent it to the district attorney regarding the jail credits of the petitioner. The order was entered, and the petitioner received his credits.

During redirect examination, appellate counsel testified that he could not remember consulting the record to ascertain whether it contained a Range II offender notice. He said that his billing to the State had no bearing on his performance and that it reflected the number of hours he worked on the case.

Next, the petitioner called Mark Henderson, his original trial counsel, to testify. He said that he did not remember his efforts to obtain the prior trial transcript. He did recall that the main issue for appeal he felt was winnable was the chain of custody issue. He said the State had the petitioner "dead to rights" with the video and audio tapes. He said that the defendant's only chance was the chain of custody. He said that, at some point, there was a transcript with testimony from Detective

Watson about Noriega and how the kilo of cocaine had progressed from Panama to Miami to Clarksville to Robertson County and finally to Goodlettsville. The question was whether the law was violated at some point and whether they actually had the same kilo as was reflected in the permissions that they had from various government agencies to use the kilo. He remembered the testimony at the suppression hearing but did not remember the police testifying differently at each suppression hearing. He remembered that there seemed to be quite a bit of cocaine missing from the kilo between the two trials. An expert testified that evaporation occurs, and there was a question about the amount of evaporation over time. He said that he could not remember what was said without reviewing the transcript. He did not recall why the defense of lesser included offenses was abandoned, though he remembered one witness testifying that the petitioner was there as "muscle" rather than as the prime mover of the conspiracy. He said that he tried to establish the lesser included offenses.

Next, the petitioner called Al Watson to testify. He said that the reverse sting was created because he had been buying cars from a group of individuals interested in buying drugs. He testified that they wanted to buy ounces but he told them he only sold kilos. He told them that he had drugs to sell and provided prices and samples.

The State did not put on any proof. The petitioner argued that the failure of his appellate counsel to properly brief the chain of custody issue, which he thought was dispositive, rendered the proceedings defective. He further argued that he did not think his attorneys performed as required in Tennessee. The State simply denied the allegations made by the defendant based on the testimony elicited during the hearing. At the conclusion of the hearing, the post-conviction court issued an order declaring the petition not well taken and denied relief. The post-conviction court determined that: 1) the petitioner's claim of ineffective assistance as to trial counsel was res judicata in light of the prior decision of this court; 2) appellate counsel took the necessary procedure, consulted and advised the petitioner, and gave effective representation; 3) the petitioner's claim of not being allowed to present all defenses was not well taken as no proof was admitted; and 4) the jury instructions were proper.

The defendant filed an appeal of the decision of the post-conviction court and was appointed counsel for his appeal.

<u>Analysis</u>

I. Full and Fair Hearing

The petitioner contends that he was denied a full and fair post-conviction hearing without the benefit of counsel. He argues that he presented several valid claims in his petition and that, because he did not have appointed counsel, he was unable to perfect the record and preserve the issues. We acknowledge that counsel could have benefitted the petitioner during the process of his post-conviction proceedings; however, because he did not want counsel during his post-conviction, we shall not now grant relief based solely on the grounds that he did not have counsel.

The post-conviction process is governed by the Post-Conviction Procedure Act of 1995. See T.C.A. §§ 40-30-101-122; Leslie v. State, 36 S.W.3d 34, 36 (Tenn. 2000). There is no constitutional right to representation by counsel in post-conviction proceedings and, thus, no right to effective assistance of counsel in post-conviction proceedings. House v. State, 911 S.W.2d 705, 712 (Tenn. 1995). However, there is a statutory right to counsel. See T.C.A. § 40-30-107(b)(1). "The appointment of counsel assists in ensuring that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction proceeding." Leslie, 36 S.W.3d at 38. Here, the record shows that the petitioner insisted that he represent himself during his post-conviction proceedings. He did not want appointed counsel. The petitioner argues that counsel is necessary to properly raise and preserve issues at trial, and we agree with his argument. However, we cannot now use his desire to represent himself as the basis to remand the issues to the post-conviction court for a new hearing. We would have been inclined to offer relief had the petitioner been denied counsel during his post-conviction. However, because he willfully declined such assistance, we will not remand for a new hearing based on this ground.

Due process in the post-conviction setting requires that the defendant have "the opportunity to be heard at a meaningful time and in a meaningful manner." Stokes v. State, 146 S.W.3d 56, 61 (Tenn.2004); see House, 911 S.W.2d at 711 (Tenn. 1995) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893 (1976)). Here, the petitioner was given great leeway during his post-conviction hearing with regard to admission of evidence, witness testimony, and offers of proof. The post-conviction court gave the petitioner an opportunity to present his case and then made findings of fact in support of its decision to deny the post-conviction petition. The record reflects that the post-conviction court did not summarily dismiss the petition as argued by the petitioner.

The petitioner also argues that he was given insufficient time to prepare for his hearing. He specifically contends that the failure to disclose to him the State's file until the day before the hearing prevented him adequate review time. Initially, we agree that the petitioner should have been given more time to review the discovery materials prior to his post-conviction hearing. Acquiring the full discovery materials on the day prior to a hearing would be a handicap to even the most experienced trial lawyer and certainly to a non-lawyer proceeding pro se. However, the petitioner fails to provide proof on appeal of how he was prejudiced by the delay and fails to demonstrate how the discovery materials would have changed the outcome of the hearing. The petitioner bears the burden on appeal of demonstrating how he was deprived a fair hearing.

The post-conviction hearing was limited to the issue of ineffective assistance of appellate counsel, and the petitioner has not demonstrated that the discovery materials would have changed the outcome of the post-conviction hearing. He was allowed to fully address the issue of ineffective assistance of counsel and was allowed to call and question both his trial counsel and appellate counsel. As previously noted, the petitioner was given great leeway during his hearing with regard to putting on his case. Any error that was caused by the delay in providing the petitioner with the discovery materials was harmless in light of his ability to conduct the post-conviction hearing with regard to his questioning of witnesses and offers of proof. We conclude that the petitioner was not denied a full and fair hearing as required by law.

II. Ineffective Assistance of Appellate Counsel

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

It is unnecessary for a court to address deficiency and prejudice in any particular order or to address both if the petitioner makes an insufficient showing on either. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

The petitioner bears the burden of proving the factual allegations that would entitle him to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a de novo standard with a presumption that those findings are correct unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461. However, the post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are reviewed under a de novo standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

The petitioner first contends that appellate counsel should have raised the issue of sufficiency of the evidence on direct appeal. He submits that raising this issue on appeal would have entitled him to relief. However, after reviewing the record, this is the first time the petitioner has raised the issue of sufficiency of the evidence as he failed to include this issue in his petition for post-conviction relief. Therefore, this issue is waived. T.C.A. § 40-30-110(f). Because an appellant cannot change theories from the trial court to the appellate court, this issue is waived. State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001); State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000).

Next, the petitioner contends that the jury should have been instructed on the lesser offense of attempted possession. He submits that the evidence was sufficient to support jury instructions on the lesser offense of attempted possession for resale of three hundred grams or more of cocaine. The

record on appeal does not contain the jury instructions or a trial transcript. With an incomplete record, we presume that the trial court acted correctly. See Tenn. R. App. P. 24; State v. Jones, 623 S.W.2d 129 (Tenn. Crim. App. 1981). "An appellate court is precluded from considering an issue when the record does not contain a transcript or statement of what transpired in the trial court with respect to that issue." State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). Because the record is incomplete, we have nothing to review regarding the jury instructions.

Next, the petitioner argues that his appellate counsel rendered ineffective assistance by not addressing the chain of custody of cocaine issue in his appellate brief. He maintains that, had this issue been raised in the appeal, he would have been entitled to relief. However, we agree with the State that the issue was properly raised in the appeal as a part of the argument concerning outrageous government conduct. This court discussed the cocaine's chain of custody during the direct appeal and concluded that the cocaine remained under the jurisdiction of the federal government, thus rendering this issue devoid of merit. State v. Blackmon, 78 S.W.3d 322, 332 (Tenn. Crim. App. 2001). Further, appellate counsel testified during the post-conviction hearing that his standard practice on appeal was to select issues based on what he believed would be the most likely to result in an overturning of the original court's order. He testified that he did not believe the chain of custody issue was a "winning issue" because he did not believe there was a sufficient foundation in the record to support an argument that the chain of custody was insufficiently presented because of a lack of testimony regarding the origin of the cocaine with General Noriega in Panama. Finally, he testified that he did not believe the chain of custody issue would result in overturning the conviction based on the record. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Appellate counsel testified that he had practiced law for twenty-one years at the time of the post-conviction hearing. He also said that he had spent a great deal of time and preparation on this case, including time spent with the petitioner in preparing the appeal. The letter referencing his billing submitted for the Chancellor's approval was included as part of the record to evidence the amount of time that he committed to this matter. We conclude that appellate counsel's decision to include the chain of custody issue as a part of the outrageous government conduct argument was tactically sound and did not amount to ineffective assistance of counsel.

Next, the petitioner asserts that appellate counsel was ineffective in applying the wrong standard of review regarding the petitioner's ex post facto sentencing argument. He argues that this court conducted a de novo review with a presumption of correctness as argued by appellate counsel. However, contrary to the petitioner's assertions in his argument, this court did not conduct a de novo review with a presumption of correctness. In fact, this court concluded, "In view of the sentencing error in this case, no presumption of correctness is afforded." State v. Blackmon, 78 S.W.3d 322, 337 (Tenn. Crim. App. 2001). This error on the part of appellate counsel did not result in prejudice to the petitioner.

The petitioner has failed to demonstrate that he was prejudiced by appellate counsel's performance. We conclude that the post-conviction court properly found that the petitioner failed to prove ineffective assistance of appellate counsel by clear and convincing evidence.

<u>Conclusion</u>

For all the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE